IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN PRIDMORE | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO.: 2:06-CV-778-MEF ) |
| GWENDOLYN MOSLEY, ET AL. | ) ) |
| Defendants. | ) ) |

## SPECIAL REPORT

COME NOW the Defendants, **Gwendolyn Mosley and Richard Allen**, by and through undersigned counsel, and in accordance with this Honorable Court's June 23, 2004 Order, offer the following written report.

## PARTIES

1. The Plaintiff, Christopher Allen Pridmore, is an inmate of the Alabama Prison System.

2. Defendant Gwendolyn Mosley is a Correctional Warden III, employed by the Department of Corrections, and currently assigned to Easterling Correctional Facility.

3. Defendant Richard Allen is Commissioner of the Alabama Department of Corrections.

4. Defendant Kathy Holt is Director of Central Records for the Alabama Department of Corrections.

## EXHIBIT

EXHIBIT 1 – Affidavit of Gwendolyn Mosley

## PLAINTIFF'S CLAIMS

Plaintiff claims that the Defendants have deliberately and indifferently denied him proper medical attention in violation of his Eighth Amendment rights under the United States Constitution, and that he has been denied proper access to the courts. The Plaintiff claims only equitable relief.

## DEFENDANTS' RESPONSE

1. The Defendants deny that they violated the Plaintiff's constitutional rights.

2. The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3. The Plaintiff has failed to state a claim upon which relief may be granted.

4. The Plaintiff makes no specific allegations against Warden Mosley or Commissioner Allen.

5. The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

6. The Defendants are immune from suit due to qualified immunity.

## STATEMENT OF FACTS

Plaintiff was assigned to Easterling Correctional Facility on June 6, 2006. Plaintiff was seen by Dr. Darbouze in the Health Care Unit of Easterling on August 8, 2006. At that time, Plaintiff requested a bottom-bunk profile due to pain in his left knee. Dr. Darbouze did not find it medically necessary to give Plaintiff a bottom-bunk profile. Defendants Mosley and Allen do not possess sufficient knowledge, and they have no reason to question the professional judgment of Dr. Darbouze. Plaintiff claims that diabetic inmates are to use a cleanser for sensitive skin. Defendants Mosley and Allen do

not possess sufficient knowledge, evidence, or information indicating that diabetic inmates are to use non-soap cleanser for sensitive skin.  See, Exhibit 1.

Easterling's Law Library is open on Tuesday through Friday from 12:00 PM to 7:30 PM and Saturday from 8:00 AM to 4:00 PM.  Inmates that use the Law Library are allowed to use it when their assigned dormitory has yard and gym call.  Inmates that need additional time can request for the time by submitting a request to the Law Library Officer.  Plaintiff has not been denied access to the courts.  See, Exhibit 1.

## ARGUMENT

It is well-settled that to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. *See Estelle v. Gamble,* 97 S.Ct. 285, 292 (1976). That is, a prisoner must show his inadequate care arose from a "deliberate indifference to [his] serious medical needs." *Id.* at 291. This standard encompasses both objective and subjective components. First, the prisoner must prove an objectively serious medical need, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003) (quotation and citation omitted). Second, the prisoner must show the prison official acted with deliberate indifference to that need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004). Put generally, deliberate indifference is medical treatment that is "so grossly

3

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown,* 117 S.Ct. 1382, 1391 (1997). *See also Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995).

There is simply no evidence that can serve as a basis for Plaintiff's complaints against Warden Mosley or Commissioner Allen. Plaintiff has made no allegations that he was ever subjected to a serious risk of harm, much less that either of these Defendants possessed sufficient subjective knowledge of such a serious risk and with deliberate indifference consciously chose to disregard such a serious risk. Plaintiff has failed to provide, and cannot provide, the court with sufficient facts to raise his complaint to the level of an even arguable constitutional violation.

Furthermore, in establishing liability pursuant to § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1115-16 (11th Cir.2005). Section 1983 requires proof of an affirmative causal link between the official's acts or omissions and the alleged constitutional deprivation. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986). The causal connection may be proven by showing the official (1) was personally involved in the acts or omissions which resulted in the constitutional deprivation; (2) established a policy or custom that resulted in the constitutional deprivation; or (3) breached a duty imposed by state or local law. *Id.* Plaintiff has

4

produced no facts that would give rise to either of these Defendants being held responsible for the acts of others.

Supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993); *White v. Farrier,* 849 F.2d 322, 327 (8th Cir.1988). Warden Mosley and Commissioner Allen rely on the professional medical judgments of the persons and entities that have contracted with the State of Alabama's Department of Corrections to provide medical care to the State's inmates. Plaintiff has offered no evidence that he was at serious risk of harm or that any of the judgments of the health care providers was anything but correct.

With regard to Plaintiff's claim of an improper denial of access to the courts, "the fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). While *Bounds* guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998); *See Lewis,* 518 U.S. at 349-51, 116 S.Ct. at 2179-80. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. *Id.* at 355-57, 116 S.Ct. at 2182. For example,

in *Lewis,* the court noted actual injury could be missing filing deadlines or being prevented from presenting claims. *See Lewis,* 518 U.S. at 348, 116 S.Ct. at 2178. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355, 116 S.Ct. at 2182.

As stated above, Plaintiff first must show actual injury before seeking relief under *Bounds. See Bass v. Singletary,* 143 F.3d 1442 (11th Cir.1998). This is an essential standing requirement. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998). It is interpreted by the 11th Circuit as meaning that any prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. *Wilson,* 163 F.3d at 1290. To prevail in this case, Plaintiff must provide evidence of ". . . such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson,* 163 F.3d at 1291. Therefore, in an access-to-courts claim, Plaintiff cannot merely allege that his access to the law library, equipment and supplies is limited but rather, Plaintiff must demonstrate that the limitations of his access hindered his "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." *Wilson,* 163 F.3d at 1291. Plaintiff has utterly failed to do this in this case.

This case should also be dismissed because the Defendants are immune from suit. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or

by citizens or subjects of any foreign state." The Amendment therefore not only bars suits against a state by citizens of another state, but also bars suits against a state by that state's own citizenry. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974) and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State; thus, the Defendants should be dismissed based on immunity.

In addition, the Defendants are protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)). *Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); *see also Pinkney v. Davis*, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment

7

are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295, *quoting Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979). The Defendants have not violated Pridmore's clearly established rights; thus, they are entitled to qualified immunity.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants Gwendolyn Mosley and Richard Allen are entitled to judgment as a matter of law. WHEREFORE, these Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING (KIN047)
Attorney General


/s/ Benjamin H. Albritton
Benjamin H. Albritton (ALB003)
Assistant Attorney General


ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this the 10th day of October, 2006, served a copy of the foregoing upon the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Christopher Pridmore, #139858
Easterling Correctional Facility
200 Wallace Drive
Clio, AL  36017

/s/ Benjamin H. Albritton
Benjamin H. Albritton
Assistant Attorney General

```
              IN THE DISTRICT COURT OF THE UNITED STATES
                    MIDDLE DISTRICT OF ALABAMA
                         NORTHERN DIVISION


CHRISTOPHER A. PRIDEMORE, #139858)
     Plaintiff                   )
                                 )
     VS.                         )   CIVIL ACTION 2:06-CV-778-MEF
                                 )
GWENDOLYN MOSLEY, et.al.         )
                                 )
     Defendants.                 )
```

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me first duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley and I am presently employed as a Correctional Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, AL 36017. I am over twenty-one (21) years of age.

Inmate Christopher Pridemore, #139858, was assigned to Easterling Correctional Facility on June 6, 2006. According to our Health Care Unit, Health Service Administrator (HSA) Ms. Kay Wilson, inmate Pridemore was seen by Dr. Darbouze on August 8, 2006. At that time, he requested a bottom-bunk profile due to pain in his left knee. Dr. Darbouze did not find it medically necessary to give inmate Pridemore a bottom-bunk profile. Inmate Pridemore claims that diabetic inmates are to use a cleanser for sensitive skin. I have seen no evidence or information stating that diabetic inmates are to use non-soap cleanser for sensitive skin.

Affidavit – Gwendolyn Mosley
Civil Action #2:06-CV-778-MEF
Page 2


Our Law Library is open on Tuesday-Friday from 12:00 PM to 7:30 PM and Saturday from 8:00 AM to 4:00 PM.  Inmates that use the Law Library are allowed to use it when their assigned dormitory has yard and gym call.  Inmates that need additional time can request for the time by submitting a request to our Law Library Officer.  Inmate Pridemore has not been denied access to the courts.


_____
Gwendolyn Mosley



SWORN TO AND SUBSCRIBED TO before me this the _____ day of _____, 2006.

_____
NOTARY PUBLIC

My Commission Expires: _____